IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EMILY BORCHARDT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | CIVIL ACTION NO. 1:19-cv-891 |
| | § | |
| vs. | § | |
| | § | |
| MELINDA MONTFORD; | § | |
| MARGARET MOORE; and | § | |
| TRAVIS COUNTY, TEXAS; | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S EXPEDITED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Emily Borchardt files this motion asking the Court to temporarily restrain, and following a hearing preliminarily enjoin, Defendants Melinda "Mindy" Montford and Margaret Moore from making, or directing or encouraging others to make, statements that explicitly or implicitly state or suggest that Emily consented to being sexually assaulted. This case isn't about Emily's rapes, or even about the DA's refusal to prosecute her criminal assailants. This case is solely about whether Ms. Moore and Ms. Montford can publicly malign a victim without authorization to discuss her case or any regard for the truth. They cannot and they should be immediately enjoined from continuing to do so.

In support of her application, Emily respectfully shows the Court as follows:

### I.   SUMMARY OF FACTS

1.   The facts supporting Plaintiff's claim for defamation and a constitutional "class-of-one" violation of her Equal Protection rights are laid out in her original complaint and are

incorporated in full by reference.  A true and correct copy of the original complaint is attached as **Exhibit A** to the appendix, App. 0001-0112.

2.  As described in her original complaint, Plaintiff Emily Borchardt is a survivor of multiple rapes.  App. 0001.  She is also a named plaintiff in a class action lawsuit filed by eight female sexual assault survivors against Travis County and its current and former District Attorney, among others.  *Id.*  She filed the instant suit on September 11, 2019.  *Id.*

## The Evidence of Defamation is Clear

**STATEMENT #1:**

3.  Last fall, a neighbor alerted Emily's family to a telephone conversation she had with her former sister-in-law, First Assistant District Attorney Mindy Montford.  App. 0005-0008.  During that call, which occurred approximately six weeks after Emily became a named plaintiff in the class action, Ms. Montford told the neighbor, Dawn McCracken, no fewer than eleven times that Emily had admitted to the police that the rapes she endured were actually consensual.  *Id.*  Ms. Montford also told Emily's neighbor that it might be better for the family to be disappointed in the DA's Office rather than their daughter.  *Id.*  Ms. Montford also indicated that Emily signed a written statement admitting that she consented to her rapes.  *Id.*  During the roughly 40 minute conversation, Ms. Montford repeatedly indicated, both explicitly and implicitly, that Emily lied when she joined the class action suit, and that the DA's Office was going to have to reveal Emily's alleged lies if the class action case progressed.  *Id.*  A true and correct copy of a transcript of the phone call between Ms. Montford and Ms. McCracken is attached as **Exhibit B** to the Appendix, App. 0113-0151.

4.  The police file in this case—which she purported to have reviewed before the call—demonstrates that none of Ms. Montford's statements about Emily in the phone call were or are

true.  Quotes from the APD file that are relevant to the false statements made by Ms. Montford are included in this Motion and a true and correct copy of the police file created by APD and provided to undersigned counsel will be submitted for the Court's *in camera* review to allow the Court the opportunity to review the file in full.  Defendants have had the ability to access the APD file created in Emily's case since the time she reported her assaults and continue to have the ability to access it in full.[1]  The APD file includes an audio recording of Emily's formal statement to APD Detective Dennis Goddard, which will also be provided to the Court for *in camera* review.  Undersigned counsel will also provide a transcript of that audio recording *in camera* for the Court's convenience.

5. In the audio file of her police interview and the rest of the written police file, the record actually demonstrates that Emily stated over and over again, consistently, that she was afraid for her life and at no time consented to the assaults.  Emily even specifically takes issue with the APD detective who interviewed her for suggesting that the DA might not like parts of her description of her assaults, asking how anyone could think a rape victim doing whatever she needed to do in order to survive and avoid the next assault was consensual.  *See* APD File at 181.  And the APD file confirms that Emily did provide a written statement, but it *entirely contradicts* Ms. Montford's statements on the unauthorized phone call.  *Id.* at 177-83.

6. There is simply no doubt that the statements of fact made by Ms. Montford to Ms. McCracken about Emily were and are false.  The following table contains Ms. Montford's statements and the evidence from the APD file—APD's write-up of Emily's initial statements made to APD personnel, Emily's own written statement contained in the APD file, and Emily's audio recorded formal statement given to APD Detective Goddard—that directly refutes them:

---

[1] In fact, Ms. Moore and Ms. Montford jointly confirmed in a recent press statement that the DA's Office previously reviewed the police file in its entirety.  App. 0152.

| **Untrue Statements of Fact by Montford** | **Evidence of Falsity in APD File** |
|---|---|
| "[Emily] admits [that] she had consensual sex with the [third] guy in the second room, with the shower and all that.  **She tells the detective I had sex with him and it was consensual**." Ex. B at 13:3–6, App. 0125 (emphasis added). | APD file at 9: "Emily stated [that] . . . **all three subjects had sex with her without her permission** . . . ." (emphasis added). |
| | APD file at 58 "[Emily] said she didn't want to get into the shower . . . " |
| "[A]t the end of the day, they go and they get the DNA from the rape kit that was done, and there's only one, the presence of DNA from one male, and it's the guy that [Emily] says was consensual.  So the guy next door, his DNA is found in her rape kit, ok?  **But that's the guy who [Emily] says it was consensual**, he says it was consensual, there's not a rape there." Ex. B at 13:19–14:1, App. 0125-26 (emphasis added) | APD file at 14: "**[Emily] said she never consented to having sexual intercourse**. . . " (emphasis added). |
| | Emily's written statement, APD file at 178: "**He [the third man] took me back to his bed where he raped me . . .** " (emphasis added) |
| "[I]f you believe [Emily's] version of what happened, then you have to believe the rape happens in one room, **and then she goes and after the rape, has consensual sex with another guy**." Ex. B at 14:21–24, App. 0126 (emphasis added) | Emily's written statement, APD file at 179: "I tried to run to the door to get out but he grabbed me by the hair and pulled me back.  I learned that trying to run away or hitting him made things worse for me.  I also learned that if I said or did the wrong thing, his mood would escalate into anger very easily.  **Throughout the morning he [the third man] kept forcing me to perform various extremely sickening sexual acts on him**." (emphasis added) |
| "**[Emily] admittedly ha[d] consensual sex after she was just raped**." Ex. B at 19:4–5, App. 19 (emphasis added) | |
| "I mean, I – we're not going to be able to get over that hurdle of the fact that she goes right next door.  Now, if she was saying it wasn't consensual, that's one thing. . . . **But she says it was consensual**." Ex. B at 20:20–21:1, App. 0132-33 | Emily's written statement, APD file at 178: "**…he raped me again** . . . . Afterward, I remember finally feeling so angry that I stood up and slapped him across the face and told him to just kill me. . . . **He struck me with his open hand on the side of my head, knocking me to the floor.**" |
| "She gave a statement.  So, **in both of [Emily's] statements it was consensual sex in the second room**." Ex. B at 21:4–6, App. 0133 | Emily's written statement, APD file at 181: "On the basis of the hospital interview, the police and ADA also believed that my claim that I had been raped could not be supported because I phrase that I 'went along' with one of the showers. . . . Going along with what the rapist wants is just that – going along with it.  **That does not mean consent**.  Can anything |
| "I don't remember if that's – if she told it in the first statement, the second or both.  **But** | |

| | |
|---|---|
| **[Emily] . . . definitely says it was consensual**." Ex. B at 21:12-17, App. 0133.<br><br>"[L]ike for example, she [Emily] has to give a statement and then she gets to review it. And then she signs it, like, to say this is accurate." Ex. B at 28:17-19, App. 0140. | **a rape victim does when she thinks she will either be killed or injured be considered consensual?"** (emphasis added)<br><br>APD file at 59: "[The third man] asked [Emily] where she was going to go as she didn't have any of her things and if she left they were going to kill her."<br><br>APD file at 59: "[Emily] grabbed a towel and ran to the door again but was stopped by [the third man]."<br><br>APD file at 59: "[Emily] walked to the lobby and told the employee at the front counter that she had been sexually assaulted."<br><br>Transcript of Emily's formal statement to APD at 63:18-25: "Q.  [D]id he [the third man] threaten you in anyway?  A. Yes.  Q. What did he say?  A. Basically, he did keep me in the room by saying like you don't have any of your things, like bitch, where do you think you're going to do out there.  And he's like, if you go out there, they're going to kill you."<br><br>Transcript of Emily's formal statement to APD at 66:5-8: "A.  "I was like scared of him [the third man].  But I was – I guess I thought I had a better chance of living if I stayed with him because the other men had like kidnapped me and strangled me." |

7.     While the police file is replete with additional evidence of the atrocities and Emily's lack of consent, much of the content of the file details very sensitive information about the harm done to her that Emily never wanted in the public sphere.  She feels forced to make the foregoing parts public to demonstrate how clear it is that Ms. Moore and Ms. Montford made false statements about her.  The entire police file further and unequivocally demonstrates the falsity of those

statements, but Emily wishes to submit it *in camera* in order to avoid any further pain or invasion of her privacy.

### Continuing Defamation & Harm

8. Following the original defamation in September 2018, both Ms. Moore and Ms. Montford have made additional statements that both explicitly and implicitly affirm the (false) narrative that Emily lied about being raped and admitted as much. The statements detailed below are only those the Plaintiff can currently document. Upon information and belief, other statements have been made that perpetuate the original defamation as well.

9. After being confronted by a reporter about the call in March 2019, District Attorney Margaret Moore said publicly that she had reviewed the transcript of the call and found no improprieties in the conduct of her First Assistant. App. 0048-0049. But if Ms. Moore reviewed the police file before she made that statement, it is incomprehensible how she could come to that conclusion. And given the importance of Ms. Moore's public statements as the highest law enforcement officer in the county, it would be irresponsible not to have reviewed the relevant facts before further implying to the public at large that a rape victim had lied to her family and to this Court. Nonetheless, Ms. Moore has repeatedly and publicly stood behind Ms. Montford's statements in the phone call, both in press statements and on the campaign trail.

10. Specifically, DA Moore has made the following additional public statements about Emily and/or the instant lawsuit that Plaintiff is aware of. Upon information and belief, Ms. Montford has been present for the following statements and has not made efforts to correct them:

**STATEMENT #2:** In March 2019, Ms. Moore publicly claimed that "the allegations of impropriety [about the phone call] are unfounded" and further said, "I realize that Ms. Borchardt and her family are deeply traumatized and in much pain, [but] Ms. Montford believed she was providing information to Ms. Borchardt through an intermediary acting on [her] behalf." (App.

0048-49). Ms. Moore did not correct the factual record and thus implicitly advised the public that Ms. Montford's statements were true.

**STATEMENT #3:**   Shortly after the instant lawsuit was filed, Ms. Moore and Ms. Montford issued a joint press release, which stated, among other things that:

> "The recent federal lawsuit, filed by a plaintiff who is also a party to the 2018 class action, involves an allegation of sexual assault that occurred in January, 2018. . . .  The DA's Office reviewed the police file and concluded that the sexual assault complaint was legally insufficient for prosecution under Texas law. Additionally, the allegations in the federal cases cannot be reconciled with the totality of the evidence contained in the police file. Simply put, there is more to the story. . . . **At no time did Montford lie or intentionally make false representations about this case during the conversation**." (emphasis added)

A true and correct copy of the Joint Statement provided by Ms. Moore and Ms. Montford for release to the press is attached as **Exhibit C** to the appendix, App. 0152-53.[2]  Importantly, there is *not* more to the story as to whether or not the police file demonstrates that Emily said she consented to being raped.  She did not.  And, of course, Ms. Montford did make false representations about Emily.  She repeatedly stated – as fact – that Emily admitted she consented to being raped.  Again, the very APD file referenced in this Joint Statement confirms that Emily did not.

**STATEMENT #4:**   As recently as October 13, 2019, Ms. Moore spoke publicly about the instant lawsuit, including Emily's allegations that Ms. Montford and Ms. Moore have made false statements about her, at a DA Candidate Forum in Lago Vista for the North Shore Democrats. During that campaign event, Ms. Moore said:

---

[2] Portions of Ms. Moore's and Ms. Montford's joint statement were reported in several press outlets as well. *See, e.g.*, Mark D. Wilson, *Woman Accuses Travis County DA, top assistant of defamation over rape case, suit says*, Austin American-Statesman (Sept. 13, 2019), available at https://www.statesman.com/news/20190912/woman-accuses-travis-county-da-top-assistant-of-defamation-over-rape-case-suit-says; Terrellyn Moffett, *Woman sues Travis County for defamation over handling of sexual assault case*, KVUE (Sept. 12, 2019), *available at* https://www.kvue.com/article/news/local/woman-sues-travis-county-for-defamation-over-handling-of-sexual-assault-case/269-1972905e-5f0b-43ca-8f1d-8f13ad912622.

**PLAINTIFF'S APPLICATION FOR TRO AND PRELIMINARY INJUNCTION**
888888.001530 22882027.1

> "Yeah, so let's talk about that a little bit because I didn't -- I'm sorry that had come up because, **you know, anybody can go and file a lawsuit and allege anything they want to**. And in a civil suit – I've done complex civil litigation and civil suit. The facts that are set out in the petition were never even shown to the jury. **Okay. So you can say whatever you want to say, and that's happened here**. And it's a really unfortunate situation and it grieves me. **In this case, the allegation that there were lies told or that it was a violation of victim privacy are unsubstantiated**." (emphasis added).

True and correct copies of transcripts made from video of Ms. Moore speaking at the DA candidate forum are attached as **Exhibit D** to the appendix, App. 0154-0162.

**STATEMENT #5:**    At the same DA Candidate Forum, Ms. Moore went on to proclaim that she alone is willing to tell the truth and emphasized the significance her word carries as the DA:

> "One thing I'm going to tell you, and this is from the bottom of my soul. **You have to have a district attorney who's going to tell you the truth, who is going to deliver facts to you, whether some people like them or not.** Facts that may fly in the face of the political trend, political bully, someone who's got the character to stand up and do the right thing and tell you why we did it. I have demonstrated that. . . . **Police Chief Manley reminded me once recently. You -- you are the top law enforcement official in this county. And what you think and what you do informs the rest of us**." (emphasis added).

11.    At no time in their public statements have Ms. Moore or Ms. Montford corrected the demonstrably false statements made by Ms. Montford to Emily's neighbor. Rather, in all of their public statements, the Defendants have continued to perpetuate the explicit and implicit lies that Emily admitted to consenting to the rapes she endured.

12.    In fact, Ms. Moore and Ms. Montford have expressly stated that "nothing improper" happened in the call itself, that Ms. Montford's actions were "appropriate" because she believed she was conveying information to Emily's representative, and that the instant case filed by Emily is full of lies.

13. Ms. Montford and Ms. Moore's statements convey to the listener or reader that Emily is dishonest, that she engaged in sexual misconduct, and that she has wrongfully accused both her assailants and the Defendants here. All of those statements are themselves defamatory of Emily because they suggest that the information conveyed by Ms. Montford to Emily's neighbor in the first instance was correct and true, when it was and is demonstrably false. It is Defendants who have knowingly or recklessly lied; not Emily. And every time the Defendants speak about Emily or her case without correcting the first instance of Ms. Montford's false statements, they adopt and perpetuate them.

14. While the DA's Office may have a legitimate and plausible explanation for refusing to prosecute Emily's assailants, *that is not the issue in this case.* Ms. Montford and Ms. Moore have created the impression through their statements and publications, both explicitly and implicitly, that Emily is lying about being raped and bringing false allegations to bear on their Office.

15. Ms. Moore and Ms. Montford cannot try to salvage their own reputations or try to avoid liability for their prior legal wrongs by perpetuating a demonstrably false narrative about Emily to the public at large. Ongoing public defamation is simply not a legitimate defense to prior defamation.

16. Emily did not put her character into the public sphere, and did not choose to inject the Defendants' defamations into the election cycle where Defendants' defamatory statements continue. Prior to filing the instant lawsuit, Emily sought a tolling agreement from the Defendants, in order to avoid having to litigate her claims while the class-action lawsuit was pending and while DA Moore was going to be actively campaigning. Defendants' counsel advised that neither Mr.

Moore nor Ms. Montford was inclined to execute a tolling agreement in order to avoid filing this case immediately; Emily therefore filed the instant lawsuit to preserve her claims.

17. Emily did not falsely report the crimes committed against her, she did not admit that she consented to her rapes, and she has not filed a frivolous claim in this Court. Ms. Moore and Ms. Montford, and those within their control, must stop saying and implying that she did.

## II. EVIDENCE INCLUDED IN THE APPENDIX

18. The evidence referenced herein is as follows:

**EXHIBIT A**: Original Complaint, with exhibits (App. 0001-0112).

**EXHIBIT B:** Transcript of September 14, 2018 phone call between Melinda Montford and Dawn McCracken (App. 0113-0151).

**EXHIBIT C**: Joint Statement from District Attorney Margaret Moore and First Assistant Mindy Montford (App. 0152-0153).

**EXHIBIT D**: Transcripts of October 13, 2019 comments made by Margaret Moore at Lago Vista Democrats Candidate Forum (App. 0154-0162).

**EXHIBIT E**: November 6, 2019 Affidavit of Emily Borchardt (App. 0163-0166).

**EXHIBIT F**: November 8, 2019 Affidavit of Elizabeth G. Myers (App. 0167-0169).

## III. LEGAL STANDARD & ARGUMENT

19. "To be entitled to a preliminary injunction, a movant must establish (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest." *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (quoting *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014). Here, each of the factors is met.

**A.     Plaintiff is likely to succeed on the merits.**

20.     The first factor considers a likelihood of success on the merits.  A movant must present a *prima facie* case to show a likelihood of success on the merits.  *Daniels Health Sciences, L.L.C. v Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).  The crux of Emily's Equal Protection and defamation claims are the same: Defendants have made false statements of fact about her to specific people and the public at large in an effort to discredit and intimidate her.  Specifically, they have repeatedly stated both explicitly and implicitly that Emily admitted to having consensual sex with her rapists when she never said any such thing.  In addition, they continue to falsely inform the public that evidence of Emily's purported consent exists when it does not.

21.     There can be no real debate that the statements made by Defendants were made.  Emily has submitted evidence of all of them.  There is also no doubt that the statements made are untrue.  *See* discussion and evidence cited in Section(I), *supra*.

22.     The statements initially made by Ms. Montford and later ratified and perpetuated by both Ms. Moore and Ms. Montford are also specifically defamatory under the law.  The statements necessarily imply (albeit falsely) that Emily committed a criminal offense by making false accusations of sexual assault. Additionally, the statements necessarily imply sexual misconduct, a point plainly evidenced by ADA Montford's repeated references to how mortifying or embarrassing the revelation of the so-called truth would be.  False accusations of either criminal or sexual misconduct are *per se* defamation in Texas.

23.     The evidence submitted by Emily also establishes that Ms. Montford and Ms. Moore knew or should have known that Ms. Montford's initial statements to Ms. McCracken, and the later ratifications of those statements were false.  Indeed, both Ms. Moore and Ms. Montford

claimed as recently as September 2019 that "the DA's Office reviewed the police file" in Emily's case. App. 0152. And Ms. Montford told Ms. McCracken that she was personally familiar with Emily's case because she had staffed it. App. 0114-0115. Ms. Moore has also publicly declared that she is dedicated to "telling the truth" and "delivering facts." App. 0160. Both Ms. Moore and Ms. Montford either know the facts that are in the APD file or they have both the ability and the responsibility to learn them before making disparaging statements of fact about Emily.

24. As discussed in more detail below, there is also no doubt that Emily has been harmed, and continues to be, harmed by Ms. Moore's and Ms. Montford's actions. She pled for damages in her Original Complaint and she faces ongoing irreparable harm if Ms. Moore and Ms. Montford are allowed to continue to make false and defamatory statements about her.

**B.     A Substantial Threat of Irreparable Injury to Plaintiff Exists.**

25. To satisfy the second factor, a movant must show that "irreparable injury is likely in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 569 (5th Cir. 2011). In general, "a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, the mere fact that economic damages may be available does not always mean that a remedy at law is "adequate," particularly where, as here, the harm inflicted includes reputational injury.

26. Emily faces substantial threat of irreparable injury if Defendants are not immediately enjoined from continuing to spread lies about her. This case isn't about Emily's rapes, or even about the DA's refusal to prosecute her criminal assailants. Regardless of their views about the prosecutability of the criminal case, it is never permissible for a public official to

lie about a victim in order to discredit her. It goes to the very heart of whether a system intended to promote justice can be sustained by those charged with seeking it.

27. There can be no serious debate that disbelieving, let alone lying about, a rape victim causes immediate trauma and harm to that victim. And in Emily's case, the ongoing re-traumatization by Ms. Moore and Ms. Montford is particularly acute. The sexual assaults took place less than two years ago; the first known lies about Emily by the DA's Office began less than eight months later. And those lies have continued unabated since. Emily has endured trauma at every turn—and the trauma occasioned by a continuing and public attempt to discredit her only amplifies and intensifies the existing pain of her victimization.

28. Each time one of the defendants refuses to acknowledge that they are the ones spreading false information, they irreparably harm the character of a woman who was an honors student on the verge of graduation from the University of Texas, a woman who immediately came forward after her assaults, and a woman who suffered through horrific sexual and physical violence. The harm to her personally is obvious and cannot be overstated. It is also documented by Emily herself. An affidavit from Emily is attached as **<u>Exhibit E</u>** to the appendix, App. 0163-0166.

29. Based on Defendants' prior actions and known statements made as recently as a few weeks ago, it seems apparent that Mr. Moore and Ms. Montford intend to continue to speak publicly about Emily's case, including in upcoming events related to Ms. Moore's campaign for re-election, and to continue to misrepresent both what Emily has said and what the evidence in the APD file proves.

**C.     The Balance of Harms Weighs in Favor of Plaintiff.**

30.    The third factor asks the Court to balance the harms to the parties involved. If denied an injunction, Emily will suffer irreparable harm as described above. On the other hand, Defendants will suffer no harm because they do not have a right to publicly lie about a rape victim in order to justify their own behavior. There are simply no rights that Defendants will be denied if they are forced by this Court to immediately stop spreading false information about Emily.

**D.     The Public Interest is served by the Relief Requested**

31.    The final factor in the preliminary injunction standard considers the public interest involved. Here, the public interest is served by prohibiting Ms. Moore and Ms. Montford from continuing to lie about Emily. Ms. Moore is a publicly elected official and the top law enforcement officer in Travis County. Ms. Montford is her appointed "second-hand." The public has a significant interest in having those officials tell the truth. Conversely, no public interest is served by allowing Defendants to continue to use their platforms and networks to spread misinformation about Emily.

## IV.     BOND

32.    Plaintiff is prepared to post a bond or other security, though such bond should be nominal as there will be no harm to Defendants if the temporary restraining order and preliminary injunction are granted.

## V.     CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully prays that the Court issue a temporary restraining order, set a hearing on her application for preliminary injunction, command Defendants to appear at same, and, thereafter issue the preliminary injunction as requested herein. Plaintiff

further requests that the Court award her any other such relief at law or in equity to which she may be justly entitled.

DATED: November 8, 2019

                           Respectfully submitted,

                    By:   */s/ Jennifer R. Ecklund*

                           Jennifer R. Ecklund
                           Texas Bar No. 24045626
                           Jennifer.Ecklund@tklaw.com

                           Alexander T. Dimock
                           Texas Bar No. 24094628
                           Alex.Dimock@tklaw.com

                           John P. Atkins
                           Texas Bar No. 24097326
                           John.Atkins@tklaw.com

                         **THOMPSON & KNIGHT LLP**
                         1722 Routh Street, Suite 1500
                         Dallas, Texas 75201
                         Telephone: (214) 969-1700
                         Facsimile:  (214) 969-1751

                           Elizabeth G. Myers
                           Texas Bar No. 24047767
                           Elizabeth.Myers@tklaw.com

                         **THOMPSON & KNIGHT LLP**
                         98 San Jacinto Boulevard, Suite 1900
                         Austin, Texas 78701
                         Telephone: (512) 469-6100
                         Facsimile:  (512) 469-6180

                         **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On November 8, 2019, I electronically submitted the foregoing document to the Clerk of the Court for the United States District Court for the Western District of Texas using the electronic case filing system of the Court.

>                            */s/ Jennifer R. Ecklund*
>                            Jennifer R. Ecklund